## 11616. McLEMORE *v.* BIBB MANUFACTURING COMPANY.

1. " A servant is bound to obey a command, when given as such, by one occupying the relation of vice-principal to the master, if it pertains to the duties of the servant's employment and does not involve a violation of the law, and if the act required is not one which is of itself so obviously dangerous that no person of ordinary prudence could be expected to perform it. If, under the circumstances existing at the time of its issuance, the giving of such an order constitutes an act of negligence, but the servant, acting under the duty and obligation thus resting upon him, proceeds to execute the command, and is injured as a consequence, the master is liable in damages to the servant for the injuries so sustained." *Whiters* v. *Mallory S. S. Co.*, 23 *Ga. App.* 47 (1) (97 S. E. 453). See also *Usry* v. *Augusta Southern R. Co.*, 24 *Ga. App.* 722 (102 S. E. 184), and cases there cited.

2. The allegations contained in the petition tend to show that the plaintiff (the servant) acted under a direct command of the vice-principal in the performance of a dangerous task, and that he was required to perform such task in a manner different from that in which his work had theretofore been done. It further tended to show that his injury was caused by latent defects in the machinery which could not have become known to him by the exercise of ordinary care, and that he was not informed as to these defects or the dangerous condition of the machinery.

3. The court erred in sustaining the general demurrer and dismissing the case.

DECIDED OCTOBER 19, 1920.

Action for damages; from Muscogee superior court — Judge Howard. May 26, 1920.

*Frank D. Foley, Thomas H. Shanks,* for plaintiff.

*Goetchius & Worsley, Jones, Park & Johnston,* for defendant.

SMITH, J. I. J. McLemore sued the Bibb Manufacturing Company, alleging, in substance, that he was an employee of the defendant and was instructed to proceed to the engine-room, or filtering plant, to assist one Hunt, who was in charge of the engine-room, in replacing a broken belt which communicated power from the driving shaft to the agitator; that prior to that time, when it was necessary to repair the belt, it was the custom to stop the driving shaft by cutting out the small turbine wheel in the engine-room; that he went to the engine-room in compliance with his instruction, and upon his arrival there he received orders from the master mechanic, who was vice-principal of the master, not to cut out the small turbine wheel in any event, and that it was not to be shut down at any time during the operation of the machinery, as to do so increased the consumption of water through the big turbine wheel and caused additional cost of operation, of which the superintendent complained; that immediately above the driving shaft was a platform, and on the top of this platform were two tanks of alum water, and galvanized-iron pipes had been placed therein to conduct the alum water to the agitator; that these pipes had corroded and rusted, causing the water to leak through on the driving shaft between the pulley and the end of the bearing in which the driving shaft worked, and form a glutinous, gummy, and sticky substance, which corroded and roughened the driving shaft; that immediately under the driving shaft was an unguarded walkway about two feet wide, which walkway was about fifteen or sixteen feet from the ground; that the plaintiff was standing on this unguarded walkway, lacing the defective belt, when he was injured in a manner described; that the plaintiff together with Hunt placed the belt around the bearing (which bearing was stationary) in which the end of the driving shaft rotated for the purpose of lacing the belt; that the sticky, glutinous, and gummy substance on the driving shaft could not be seen, because of the rapidity with which the driving shaft revolved and because dust had settled thereon and made the deposit the same color as the driving shaft; that in lacing the belt it slipped from

the stationary bearing to the driving shaft, where the roughened, glutinous, and gummy substance caused it to adhere and stick, and it wrapped around the driving shaft, caught the plaintiff's arm and produced the injuries complained of.

The various acts alleged to be negligence are set forth in the petition as follows: "(a) in demanding, requiring and ordering your petitioner to repair and replace said belt while the main driving shaft was rotating, and issuing instructions for the small turbine wheel not to be stopped while said belt was being relaced, repaired, and replaced; (b) in permitting the pipes and connections of the alum tank to become corroded, rusted, and leaky, so that the alum water dripped through the floor above and deposited a sticky and gummy substance upon and corroded the main driving shaft between the bearing and the pulley wheel; (c) in placing or permitting to be placed in said alum tank galvanized-iron piping, which alum water would corrode, rust, and eat up, instead of lead piping, or piping of other material or metal, which alum water would not corrode, rust, or deteriorate and make holes in; (d) in not repairing said piping and causing the same to be inspected and repaired when the same began to leak and drip through upon the driving shaft between the pulley and the bearing; (e) in failing to have the gummy and corroding alum deposit removed from said driving shaft prior to the ordering of the replacing and lacing of the belt thereon; (f) in failing and refusing to warn your petitioner of the dangerous condition and the leaky condition of the conduit pipes which carried the alum water from the alum tank; (g) in ordering your petitioner to repair said belt without stopping the turbine wheel which drove the main driving shaft, well knowing that the gummy and glutinous deposit of alum water made such a method unusually hazardous and dangerous; (h) in failing to inspect said shaft, and in failing to inspect the conduit pipes conveying the alum water from the tanks and in failing to warn your petitioner against each defect; (i) in failing to warn your petitioner against one and all of the above enumerated defects, well knowing that said defects made the undertaking to repair said belt unusually and abnormally hazardous."

The trial judge sustained a general demurrer and dismissed the petition, and the plaintiff excepted.

It is not necessary to add anything further to what is said in the headnotes.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*